58 So.2d 776

**ROBERSON MOTOR CO. v. SIMS et al.**

**3 Div. 554.**

Supreme Court of Alabama.

May 1, 1952.

Ben Hardeman, Montgomery, for appellant.

Files Crenshaw, Montgomery, for appellees.

LIVINGSTON, Chief Justice.

The appeal is from a decree of the Circuit Court, in Equity, of Montgomery County, awarding complainants in the court below the relief prayed for in their bill of complaint. Errors are assigned based on the overruling of appellants' demurrer. to the bill, as last amended, and its several aspects. On a former appeal this court affirmed the lower court's decree overruling appellants' demurrer to the bill of complaint. Roberson Motor Co. v. Sims, 252 Ala. 176, 40 So.2d 79.

After evidence was taken *ore tenus* before the trial court, complainants amended their bill to meet the evidence, appellant refiled its demurrers to the bill as last amended, and upon the same being overruled, amended its answer.

The bill was filed by G. W. Sims as the purchaser of an automobile to cancel the transaction, and for relief against a contract and notes to secure a balance of the purchase price. Sims bases his right to relief primarily on the ground that he was a minor at the time of the transaction, also that there was a misrepresentation made to him as to the amount recited in the instrument as to the balance of the purchase price remaining unpaid. Sims' wife, also a minor 17 years of age, was made party complainant because she signed the note and conditional sales contract securing the balance of the purchase price of the automobile. The suit was instituted against the Roberson Motor Company, a corporation, and the Service Finance Company. The Service Finance Company was · discharged from all liability in the cause.

Appellant's answer, admitting certain allegations of the bill, denied, in substance, that it was a party to the transaction.

The complainants' evidence tended to establish the following facts.

Sims and wife, residents of Dallas County, Alabama, were both under twenty-one years of age on January 31, 1948. On said date, Sims accompanied by his wife went to the Roberson Motor Company used car : lot in Montgomery, Alabama, over which was a large sign bearing the name of the company, for the purpose of selling or trading his 1941 Chevrolet upon a newer car; was accosted by one Pruitt who represented himself to be a salesman of the Roberson Motor Company and who showed Sims a 1947 Chevrolet among the cars on said lot, offered to trade for a difference of $1250.-00, took Sims to Roberson Motor Company's office on the lot, prepared the conditional sales contracts or mortgages which Sims, relying upon said salesman's representation that the difference was $1250.00—"taking their word for it"—signed without reading, his wife signing likewise. The conditional sales contract or mortgage on the 1947 Chevrolet was discounted by Roberson Motor Company to the Service Finance Company: that the Finance Company charged $600 to finance $1245. Sims' first knowledge that the difference called for by the closing papers was $1840.08, instead of $1250 was when he received a notice from the Service Finance Company to the effect that Roberson Motor Company had assigned his papers to it and showing the amount due as $1840.08. Sims promptly disaffirmed the contract, returned the 1947 Chevrolet to Roberson Motor Company, asked for the return of his 1941 Chevrolet and attempted to rescind the sale. Herman Roberson who testified that he was the alter ego of the company refused to accept the 1947 Chevrolet, and refused to return Sims' 1941 Chevrolet. Acting under Herman Roberson's instructions, Sims then took the 1947 Chevrolet to Birmingham, Alabama, sold it at a car auction for $1900. Sims carried the $1900 check to Herman Roberson who refused to accept it whereupon Sims got a second check for $1900 from the Robert Murphy Auto Sales of LaGrange, Georgia, . payable to himself and Service Finance Company, which he and his brother took first to Service Finance Company where they were told by the manager that Sims' papers had been sold back to Roberson Motor Company; they then went to Roberson Motor Company, attempted to see Herman Roberson but he refused to see them.

Rose Sims, also a minor, was induced by someone in the office of Roberson Motor Company to sign the papers with her husband but had no interest in either car.

Besides the mortgage for $1840.08, Sims and wife were induced to sign other mortgages.

Mr. J. O. Roberson, a witness for appellants, no relation whatever to Herman Roberson, testified that he owned the 1947 car sold to Sims, and offered in evidence the check with which he paid for same. He also testified that he kept cars on the Roberson Motor Company lot, but that Roberson Motor Company had no discretion in his deals, that he could sell for any price he pleased: that he paid Roberson Motor Company for the use of their lot, and for the use of their name in transferring papers to the Finance Company, as they required a licensed dealer and he, J. O. Roberson, had no license. He testified that he had absolute discretion as to all of these sales of his own cars from the Roberson Motor Company lot: that there was nothing to put the public on notice of this arrangement which was between himself and Roberson Motor Company and for which the company was paid by him by splitting profits with it: that the public could not tell which car belonged to him or which car belonged to Roberson Motor Company, that they were all together on the lot: that the sale of the 1947 Chevrolet he claimed to own was made to Sims by Roberson Motor Company on its printed form. The printed form is signed Roberson Motor Company by G. L. Pruitt. He further permitted a conditional sales contract or mortgage back to be made payable to Roberson Motor Company without any protest and this paper was discounted to Service Finance Company and then reassigned to Roberson Motor Company: that Herman Roberson knew all about it. J. O. Roberson further testified that Sims was told the amount of the payments, the fact that they extended for 24 months, the fact that time financing would be more expensive, and that there was a first and second mortgage.

Herman Roberson testified that he was president of Roberson Motor Company and that it was his personal business. He sub-

stantiated J. O. Roberson's testimony as to the arrangement between them whereby he, Herman Roberson, received 50% of the profits from J. O. Roberson's transactions: that J. O. Roberson was not a licensed dealer but was permitted to put his cars upon the Motor Company's lot, sell them as if they belonged to the Motor Company and gave the Motor Company 50% of the profits. He admitted that G. L. Pruitt was his salesman but claimed that he handled other cars besides. He admitted seeing Sims when he attempted to rescind the transaction, returned the 1947 Chevrolet and asked for his 1941 Chevrolet back. He admitted saying to Sims, "I allowed you a good price on your car * * *," after trying to claim that the transaction was not his company's. He admitted "I got a bill for what was done to it (the 1941 Chevrolet) * * *"; that "I had already sold the 1941 Chevrolet," and that the bill of sale was on his company's stationery signed by his wife who had authority to handle the matter, and that the bill of sale for the 1947 Chevrolet was on the Roberson Motor Company's printed form: that he called Bob Murphy and asked him to stop payment on the check for $1900 given Sims.

After hearing the evidence the trial court, omitting formal parts, entered the following decree.

"Upon consideration of the testimony as shown by the note of submission, the Court is of the opinion and so finds that the Complainants are entitled to the relief prayed for in their said Bill.

"It is therefore, Ordered, Adjudged and Decreed by the Court:

"1. That all of the negotiable instruments described in the Bill of Complaint and offered in evidence in this cause and being more particularly described as follows:

"(a) Conditional sale contract executed by Complainants on January 31, 1948, to Roberson Motor Company covering the conditional sale of one 1947 Chevrolet automobile more particularly described therein, assigned by 'Herman Roberson, Dealer' to Service

Finance Company, securing a balance of $1840.08.

"(b) Promissory note executed by Complainants on January 31, 1948, payable to Roberson Motor Company and assigned to Service Finance Company in the total sum of $1840.08.

"(c) Conditional sale agreement executed by Complainants on January 31, 1948, to Roberson Motor Company covering the conditional sale of one 1947 Chevrolet automobile more particularly described therein, assigned by 'Herman Roberson, Dealer,' to Service Finance Company securing a balance of $1840.08.

"(d) Promissory note executed by Complainants with name of payee and amount left blank and undated.

"(e) Conditional sale contract executed by Complainants covering a 1947 Chevrolet automobile more particularly described therein securing $150.00 in deferred payments with date and name of payee left blank.

"(f) Conditional sale agreement signed by Complainants with name of payee, date, amount and description of motor vehicle all left blank; "be and the same are hereby cancelled and held null and void.

"2. That the check for $1900.00 payable to the Complainant, G. W. Sims and Service Finance Company endorsed by both of said parties in blank, attached to Complainants' Bill of Complaint as Exhibit 'C' and offered in evidence as Complainants' Exhibit 'C' be and the same is the property of defendant, Roberson Motor Company, but that the endorsement appearing thereon by payees is held by the Court to be without recourse as to either payee and is hereby directed to be delivered by the Register to the Defendant, Roberson Motor Company.

"3. That Defendant, Roberson Motor Company pay to the Complainant. G. W. Sims the sum of $1,000.00.

"4. That the Defendant, Roberson Motor Company further pay all costs of court in this proceeding.

"5. That Service Finance Company be discharged from any liability in this cause."

As above indicated we held, on the former appeal, that the bill contained equity. After affirmance here the bill was amended in the court below and demurrers were filed to the bill as last amended. We have carefully examined the bill as last amended, together with the bill which we had before us on first appeal, and are clear to the conclusion that the bill as last amended presents substantially the same questions which were before us on the first appeal. Under Title 13, section 28, Code 1940, we can consider these questions again, and have done so, but are of the opinion, and hold that the trial court correctly overruled the demurrers to the bill as last amended.

It is urgently insisted that the evidence is not sufficient to establish an estoppel against appellant, nor is the same sufficient to show a ratification by the appellant, Roberson Motor Company, of the automobile transaction between Sims and J. O. Roberson. This argument assumes that the actual car trade was between Sims and J. O. Roberson. It is clear to us that the trial judge did not think so, and we are in accord. There is ample evidence to support a finding that the transaction was between Sims and the Roberson Motor Company, although J. O. Roberson and Herman Roberson testified that it was between Sims and J. O. Roberson. Herman Roberson's testimony, set out above, is sufficient for that purpose; and no question of estoppel or ratification arises.

Affirmed.

FOSTER, SIMPSON and STAKELY, JJ., concur.